# IN THE SUPREME COURT OF IOWA

No. 47 / 05-0279

Filed October 26, 2007

**JACKIE WEISSENBURGER**,

    Plaintiff,

vs.

**IOWA DISTRICT COURT FOR WARREN COUNTY**,

    Defendant.

---

Certiorari to the Iowa District Court for Warren County, Richard B. Clogg, Judge.

Former spouse of individual subject to no-contact order challenges as illegal the district court's order allowing individual to possess firearms for hunting. **WRIT SUSTAINED.**

Nancy Lynn Robertson, Des Moines, for plaintiff.

Merle H. Weiner, Eugene, Oregon, for amici curiae, Iowans for the Prevention of Gun Violence and The Iowa Women's Foundation.

**TERNUS**, **Chief Justice.**

By petition for writ of certiorari, the plaintiff, Jackie Weissenburger, challenges the legality of an order entered by the defendant, Iowa District Court, amending a no-contact order to allow her former spouse, Joseph Weissenburger, "to possess firearms for hunting." Jackie claims the amended order violates 18 U.S.C. § 922(g)(8) (2000), which prohibits certain individuals subject to a no-contact order from possessing firearms while the order is in effect. We agree that the amended order violates federal law. Therefore, we sustain the writ.

### I. Background Facts and Proceedings.

During the pendency of a dissolution-of-marriage action involving the plaintiff, Jackie Weissenburger, and her former husband, Joseph, the court entered a domestic abuse no-contact order prohibiting contact by Joseph with Jackie. *See* Iowa Code § 236.5(2)(*c*) (2001). Subsequently, Joseph was charged with a violation of that order and pled guilty to harassment in the third degree. In addition to imposing a deferred judgment with informal probation and a fine, on December 5, 2003, the district court entered a criminal no-contact order pursuant to Iowa Code section 901.5(7A) to remain in effect for five years.

Under federal law, if a protected party meets the definition of an "intimate partner," an individual subject to a no-contact order may not possess firearms while the order is in effect. *See* 18 U.S.C. § 922(g)(8). A former spouse falls within the definition of "intimate partner." *See id.* § 921(a)(32). The form no-contact order used by the district court advised Joseph that "[f]ederal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition." In addition, the court had checked a box on the form order indicating the protected party, Jackie, met the definition of an "intimate partner."

Finally, the order included the stock language: "Defendant shall not possess firearms while this order is in effect."

Several months after entry of the criminal no-contact order, Joseph filed an application to have the order terminated or at least modified to permit him to possess firearms for the purpose of hunting with his minor son. Joseph asserted that he had complied with all the terms and conditions of his deferred judgment, as well as the no-contact order. In a ruling dated January 12, 2005, the district court determined the no-contact order should remain in effect, but that the order should be amended to allow Joseph to possess firearms for hunting. The same day, the district court issued an amended and substituted no-contact order in which the court had removed the check from the box indicating the protected party was an "intimate partner" and had crossed out the prohibition stating "Defendant shall not possess firearms while this order is in effect."

In response to the court's action, Jackie filed an application for writ of certiorari with this court, alleging the district court's order allowing Joseph to possess firearms was illegal under federal law. We granted the petition and notified the district court that our action would stay further proceedings to enforce the district court's ruling and order pending a resolution of the certiorari action in our court. Thereafter, the district court entered an "order *nunc pro tunc*" that removed from the court's January 12, 2005 order that portion granting Joseph's application to modify the criminal no-contact order. In the order *nunc pro tunc,* the district court denied Joseph's application to modify, stating "the Defendant's request exceeds this Court's jurisdiction." Finally, the court rescinded the amended and substituted no-contact order that had been entered after its January 12, 2005 ruling and simultaneously filed a

new amended and substituted no-contact order that restored the prohibition on Joseph's possession of firearms.

In her brief, Jackie makes two arguments. First, she asserts the district court had no authority to amend its January 12, 2005 order through a *nunc pro tunc* order. Second, she claims the court exceeded its authority in modifying the December 2003 criminal no-contact order on January 12, 2005, to allow Joseph to possess firearms. We will address each issue separately.

## II. Scope and Standards of Review.

In a certiorari case, we review the district court's ruling for correction of errors at law. *State Pub. Defender v. Iowa Dist. Ct. for Polk County*, 721 N.W.2d 570, 572 (Iowa 2006).

> "A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise acted illegally. . . . 'Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law.' "

*Id.* (quoting *State Pub. Defender v. Iowa Dist. Ct. for Black Hawk County*, 633 N.W.2d 280, 282 (Iowa 2001)). We are bound by the district court's factual findings, if well supported. *State Pub. Defender v. Iowa Dist. Ct. for Wapello County*, 644 N.W.2d 354, 356 (Iowa 2002).

## III. *Nunc Pro Tunc* Order.

Although there is a question concerning the jurisdiction of the district court to enter an order in the criminal case once this court had granted an application for writ of certiorari challenging the court's action in that case, we need not address that concern. Even if we assume that the district court retained jurisdiction in the criminal case, that court's use of a *nunc pro tunc* order was improper.

It has long been understood that

> the purpose of a *nunc pro tunc* entry is to supply or correct a record to make it conform to that which was actually done at an earlier date, and that as between the parties it operates to validate or correct the original judgment.

*Murnan v. Schuldt*, 221 Iowa 242, 245, 265 N.W. 369, 371 (1936). Thus, a court may properly use a *nunc pro tunc* order to correct a clerical error, an error "that is not the result of judicial reasoning and determination." *State v. Naujoks*, 637 N.W.2d 101, 113 (Iowa 2001). On the other hand, "a nunc pro tunc order is not available to correct a judicial, as distinguished from a clerical, error." *State v. Steffens*, 282 N.W.2d 120, 122 (Iowa 1979). Consequently, it "cannot be used to remedy an error in judicial thinking, a judicial conclusion, or a mistake of law." *Naujoks*, 637 N.W.2d at 113. It "is not an alternative to the established procedures to alter, vacate, or modify judgments under our procedural rules." *Steffens*, 282 N.W.2d at 122.

Based on the record before us, we are convinced the district court's order *nunc pro tunc* did not correct a clerical error made in the court's January 12, 2005 order. Rather, the *nunc pro tunc* order reflected the court's *subsequent* determination that it had no jurisdiction to grant Joseph's request to possess firearms. *See Graber v. Iowa Dist. Ct.*, 410 N.W.2d 224, 230 (Iowa 1987) (concluding *nunc pro tunc* order constituted a change in the judge's thinking, not the correction of a clerical error). A change of this nature is inappropriate in a *nunc pro tunc* order because it alters the court's original decision, not simply the record made of the court's original decision. *See State v. Harbour*, 240 Iowa 705, 710, 37 N.W.2d 290, 293 (1949) (noting *nunc pro tunc* order in that case was proper because "[t]he correction was sought to make the record entry conform to the actual pronouncement of the court, not to evidence a change in the decision itself").

In summary, even if the district court had jurisdiction to modify its January 12, 2005 order, it had no power to alter its decision through a *nunc pro tunc* order. Accordingly, the *nunc pro tunc* order must be set aside. *See Graber*, 410 N.W.2d at 230 (sustaining writ of certiorari challenging district court's issuance of *nunc pro tunc* order and setting aside such order).

## IV. Modification of No-Contact Order to Permit Possession of Firearms.

The primary issue presented in this case is whether the district court properly modified the criminal no-contact order on January 12, 2005, to allow Joseph to possess firearms for the limited purpose of hunting. Jackie contends the court's action was illegal because federal law prohibits Joseph's possession of firearms for any purpose.

**A. Pertinent Federal Law Governing Possession of Firearms.** In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994. *See* Pub. L. 103–322, 108 Stat. 1796. Title XI contains a provision designed to disarm batterers. *See* 18 U.S.C. § 922(g)(8). In pertinent part, that federal statute prohibits the possession of "any firearm or ammunition" by a person who is subject to a court order that

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C) . . . .
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .

18 U.S.C. § 922(g)(8).

The first step in our consideration of Jackie's challenge to the court's order is a determination of whether § 922 prohibits Joseph from possessing firearms. There is no argument made on appeal that Joseph did not have notice and an opportunity to be heard prior to issuance of the initial criminal no-contact order in December 2003. Thus, § 922(g)(8)(A) is satisfied. Secondly, the court's initial criminal no-contact order provided that Joseph "shall not threaten, assault, stalk, molest, attack, harass, or otherwise abuse" Jackie and included a finding that Jackie was an intimate partner as defined in 18 U.S.C. § 921(a)(32). Accordingly, § 922(g)(8)(B) of the federal law is met. Finally, the December 2003 order expressly prohibited Joseph from using, attempting to use, or threatening to use "physical force against [Jackie] that would reasonably be expected to cause bodily injury." This provision satisfied § 922(g)(8)(C)(ii) of the federal statute. The record clearly demonstrates that Joseph fell within the parameters of the federal law prohibiting the possession of firearms by a person subject to a no-contact order.

**B. Ability of State Court to Allow Possession of Firearms in Contravention of Federal Law.** That conclusion brings us to the final question: Did the district court properly allow Joseph to possess a firearm for hunting notwithstanding the prohibitions of federal law?

It has long been held that the laws of the United States are "just as much binding on the citizens and courts [of the States] as the State laws are." *Clafin v. Houseman,* 93 U.S. 130, 136, 23 L. Ed. 833, 838 (1876). Thus, "state courts cannot refuse to apply federal law—a conclusion mandated by the terms of the Supremacy Clause." *Printz v. United States,* 521 U.S. 898, 928, 117 S. Ct. 2365, 2381, 138 L. Ed. 2d 914,

940 (1997). As the United States Supreme Court has observed, "state courts share responsibility for the application and enforcement of federal law." *Howlett v. Rose*, 496 U.S. 356, 372–73, 110 S. Ct. 2430, 2441, 110 L. Ed. 2d 332, 351 (1990).

In view of these governing principles, we conclude the district court had no power to authorize Joseph to possess firearms in violation of federal law. Once the court determined the no-contact order should continue in effect, Joseph was prohibited under federal law from possessing firearms regardless of whether this prohibition was included in the court's no-contact order.

It has been suggested that the court's amended no-contact order was not contrary to federal law because it did not explicitly state that Joseph could possess firearms. Although the amended no-contact order did not expressly authorize Joseph to possess a firearm, such authorization was the practical result of the court's ruling under the circumstances of this case. In its ruling on Joseph's application for modification of the no-contact order, the court stated:

> Defendant [Joseph Weissenburger] has also asked the court to amend the order to allow hunting. There was no evidence that the defendant should not be allowed to possess firearms for hunting. The defendant's motion to amend should be granted.

Simultaneously with the entry of this ruling, the court filed an amended no-contact order in which the court had crossed out the prohibition regarding firearms possession. It is clear to this court, and presumably was clear to Joseph, that the district court intended its amended no-contact order to affirmatively authorize Joseph's possession of firearms, as expressly determined by the court in its simultaneous ruling granting

Joseph's application to modify. As previously discussed, the court had no power to allow Joseph to possess firearms in violation of federal laws.

**V. Disposition.**

The writ of certiorari to this court is sustained. The district court order allowing Joseph Weissenburger to possess firearms is annulled.

**WRIT SUSTAINED.**