# IN THE SUPREME COURT OF IOWA

No. 21–0487

Submitted October 12, 2022—Filed November 10, 2022

**STATE OF IOWA,**

Appellee,

vs.

**RICK D. PETRO,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

Defendant seeks further review of a court of appeals decision that affirmed the district court's extension of a no-contact order. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Karmen R. Anderson (argued) of Anderson & Taylor, P.L.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines (argued), Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

In this appeal, we review a decision to extend a no-contact order. This is the third such extension; the no-contact order was originally entered after a serious incident of domestic violence in 2009.

No-contact orders are an essential tool in protecting victims of domestic abuse. However, our legislature has recognized that these orders do, in fact, limit the activities of the persons who are subject to them and thus has directed that the extension should be denied if "the court finds that the defendant no longer poses a threat to the safety of the victim." Iowa Code § 664A.8 (2021). Here, considerable time had elapsed since the incident, the defendant had gone through therapy and other programming, the defendant had not violated the terms of the order in the prior ten years, and the parties had not interacted with each other within that ten-year frame. We conclude that the defendant carried his burden of showing that he no longer posed a threat to the safety of the victim and that substantial evidence does not support the district court's latest extension.

Accordingly, we reverse the district court's ruling, we vacate the decision of the court of appeals, and we remand to the district court for further proceedings consistent with this order.

### II. Facts and Procedural History.

On August 23, 2009, Rick Petro was at home with his wife S, their thirteen-year-old daughter, and their eleven-year-old son. Petro became upset

over the number of biscuits the daughter was eating for lunch because Petro had not gotten any the last time. Petro's wife S tried to intervene and express her views, but Petro responded by turning violent. He knocked S down and repeatedly beat her with his fists in the presence of the two children. When the son began to call the police, Petro threatened to kill S and the son.

Following the arrival of the police, Petro was arrested and taken to jail. A temporary order was entered prohibiting Petro from having contact with S. Later, Petro was charged in the Warren County District Court with domestic abuse assault causing bodily injury, a serious misdemeanor, and harassment in the first degree, an aggravated misdemeanor. Petro apparently had no regular employment. Because of his lack of funds, the court appointed him counsel.

In December, Petro agreed to plead guilty to assault causing bodily injury, as amended, a serious misdemeanor. *See* Iowa Code § 708.2(2) (2009). He admitted, "I struck [S] with an open hand on upper left arm near shoulder causing pain and redness." A month later, on January 26, 2010, Petro received a deferred judgment, was put on probation for one year, and was ordered to complete the Batterer's Education Program. Additionally, a one-year no-contact order with S was entered.[1]

A few months after that, Petro stated to a social worker that if his wife didn't "keep her mouth shut [he was] going to take a f[******] ball bat to her head." This violated the terms of his probation; the deferred judgment was revoked,

---

[1]As required by federal law, the order prohibited Petro from possessing firearms. *See* 18 U.S.C. § 922(g)(8).

Petro received a one-year suspended sentence and probation, and he was ordered to attend therapy.

At the beginning of 2011, S moved for an extension of the no-contact order. Following a hearing, the court ordered a five-year extension. Approximately two months later, during a hearing on the termination of Petro's parental rights, Petro addressed S directly and said, "Why are you doing this to me?" This was a violation of the no-contact order and the terms of Petro's probation. The district court found Petro in contempt and sentenced him to two days in jail. Additionally, Petro's parental rights to his son and daughter were terminated.

Petro completed the Batterer's Education Program and was discharged from probation. Several years passed and, at the beginning of 2016, S moved for another extension of the no-contact order. Her application explained that she "would like the no-contact order extended for as long as possible." Within a few hours of S's filing for the extension—and without awaiting a response—the district court extended the no-contact order for five years, through February 8, 2021.

Petro moved for reconsideration, and the court held an evidentiary hearing. Petro's testimony was notably prickly. For example:

Q. Do you want to have contact with [S]?

A. None. I want her out of my life just as much as she wants me out of hers. I just want to move on.

. . . .

Q. And how many years were you married to her?

A. I don't remember. Three? Five? Too many.

. . . .

Q. What have you done to demonstrate to this Court that you have overcome the anger issues that led you to assault [S]?

A. Well, first of all, I haven't been in any trouble since this incident. And right now, I believe I'm more calm and controlled than you are.

. . . .

Q. What are you doing to address the mental health diagnoses you received in April of 2010?

A. Well, I'm still seeking counseling, and that's about it. I don't necessarily think the current medical evaluations are any of your business.

Following the hearing, the district court declined to reconsider the five-year extension. The court explained:

A determination as to the safety of [S] is required in this matter. Rick Petro was convicted of assault and two violations of the original No Contact Order. Petro stated that he wants "[S] out of his life" and that he was "married too long to [S]."

The Court finds that Petro is still a threat to the safety of [S].

Petro appealed the extension. We transferred his appeal to the court of appeals, which affirmed the district court, reasoning in part as follows:

The district court did not find evidence in this record to disprove the existence of a continued threat to [S]'s safety. The court pointed to [Petro]'s original act of domestic violence in 2009 and his two violations of the no-contact order in 2010 and 2011. The court also highlighted two disparaging references to his relationship with [S] from [Petro]'s testimony at the 2016 hearing, specifically that he wanted her "out of his life" and that they were married "too long."

[Petro] argues the district court took these references out of context, and he characterizes them as "innocuous statements that are often heard as response from one that had been married and is now divorced." While the statements may have more than one connotation, we defer to the trial court—it had the chance to hear

the tone and observe the demeanor of the witness when he expressed these negative views regarding the protected party.

We also find other aspects of [Petro]'s testimony support the district court's findings. For instance, when asked about the ball-bat-to-the-head threat he made toward [S], he minimized the incident as follows: "During a supervised visit with my son, the DHS worker thought I said something that was inappropriate." [Petro] also blamed "bad advice" from his attorney for the courtroom confrontation with [S] that constituted the second violation of the no-contact order. These examples of his defensive posturing are inconsistent with any true appreciation of the hazard he has posed to his former wife.

*State v. Petro*, No. 16–1215, 2017 WL 1735894, at *3 (Iowa Ct. App. May 3, 2017).

On February 5, 2021, S again applied for an extension of the no-contact order. Without awaiting a response, the district court granted the extension on February 7. That same day, Petro filed a resistance to S's application and asked that the extension request be either denied or set for an evidentiary hearing. Upon learning that the extension had already been granted, Petro filed a motion for reconsideration on February 9.

The district court held an evidentiary hearing on March 26 at which both S and Petro testified. There, S acknowledged that Petro had not violated the no-contact order since 2011. She mentioned an incident where Petro's parents had stopped by her house and taken pictures of items set out for a garage sale, but the record indicates that this incident occurred in 2011. S also mentioned seeing Petro once in a Chinese restaurant, an incident that prompted her to leave the restaurant immediately. However, S did not testify that Petro saw her at the restaurant. And Petro had no recollection of the incident.

By the time of this 2021 hearing, Petro was fifty-nine years old and had been employed as a trucker hauling jet fuel for the last five years. Petro testified that he had completed six or seven years of therapy. He lived in the same town as S but out in the country and wanted to be able to use firearms to hunt. He had not tried to communicate with S since the April 2011 violation that occurred at the termination hearing. Petro agreed that if he saw S, he would be the one that would have to leave.

At the conclusion of the hearing, the district court approved another five-year extension of the no-contact order to 2026. The court reasoned,

> A determination as to the safety of [S] is required in this matter. Rick Petro was convicted of assault and two violations of the original No Contact Order. [S] testified that the defendant's parents have driven by [S]'s home without cause and she believes that the defendant had sent them there. The defendant testified that the time of the termination of his parental rights were the worst days of his life. The court is concerned that the defendant also wants his rights to bear arms reinstated (albeit as to hunting).

Petro appealed, and we transferred the case again to the court of appeals. A divided panel of the court of appeals affirmed the district court.[2] The majority found substantial evidence to support the district court's ruling, pointing to S's "testimony that [Petro]'s parents have driven by her home without cause and her belief that [Petro] sent them there." The majority also cited the district court's concern about Petro's "desire to have his right to bear arms reinstated." The

---

[2]The State disputed whether the order granting the extension was an appealable final judgment. *See* Iowa Code § 814.6(1)(*a*). Nonetheless, the State conceded that Petro's notice of appeal could be treated as a petition for certiorari. In light of that concession, the court of appeals treated the notice of appeal as an application for discretionary review and granted the application.

dissenting court of appeals judge concluded there was no substantial evidence to support the extension, emphasizing the undisputed evidence that the incident involving Petro's parents occurred before 2016.

We granted Petro's application for further review to consider further the standards for extending no-contact orders.

### III. Standard of Review.

We review questions of statutory interpretation of Iowa Code chapter 664A for errors at law. *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018). A court's factual findings with respect to a no-contact order should be sustained when supported by substantial evidence. *Id.*

### IV. Legal Analysis.

Iowa Code section 664A.8 provides the authority for extending no-contact orders. It states:

> Upon the filing of an application by the state or by the victim of any public offense referred to in section 664A.2, subsection 1 which is filed within ninety days prior to the expiration of a modified no-contact order, the court shall modify and extend the no-contact order for an additional period of five years, unless the court finds that the defendant no longer poses a threat to the safety of the victim, persons residing with the victim, or members of the victim's family. The number of modifications extending the no-contact order permitted by this section is not limited.

"[T]he clear purpose of section 664A.8 is to grant the court express authority to extend the duration of no-contact orders when the circumstances require continuing protection." *Ostergren v. Iowa Dist. Ct.*, 863 N.W.2d 294, 299 (Iowa 2015).

A few years ago, in *Vance v. Iowa District Court*, we discussed the standards for extending no-contact orders under section 664A.8 and, ultimately, reversed an extension. 907 N.W.2d at 481–83. The defendant there had been convicted of third-degree harassment, a simple misdemeanor. *Id.* at 475. Our appellate record was "largely devoid of any evidence explaining the underlying conduct that gave rise to the civil no-contact order," but it apparently involved the defendant's unsolicited and unreciprocated texts, tweets, and phone calls. *Id.* at 482–83. After the order had been in effect for a year, the State sought to extend it for five more years pursuant to section 664A.8. *Id.* at 475.

The parties in *Vance* agreed that the defendant had fully complied with the no-contact order during the year in question. *Id.* at 483. Additionally, a police officer testified that the defendant "had never been prone to violence or posed a threat to the safety of anyone in the community." *Id.* The only interaction between the defendant and the protected parties during the year in question had been "a coincidental encounter at the local gas station." *Id.* One of the protected parties testified that she wanted the no-contact order extended because she feared the situation with the defendant would otherwise go back to the way it was before. *Id.* at 475.

Under these circumstances, we concluded in *Vance* that the record showed no substantial evidence "to support the finding . . . that Vance continued to pose a threat to the [family]" and that "[t]o the contrary, the substantial evidence in the record clearly demonstrates that Vance does not pose a continued threat to the Staudt family warranting an extension of the no-contact order." *Id.* at 483.

Accordingly, we reversed the district court's decision to extend the no-contact order. *Id.*

Several observations we made about section 664A.8 in *Vance* are relevant here. First, the defendant has the burden of proof to demonstrate by a preponderance of the evidence that they no longer pose a threat to the protected party. *Id.* at 482. "Consequently, if the defendant proves by a preponderance of the evidence that he or she no longer poses a threat to the protected persons, the court should not extend the no-contact order for an additional five years." *Id.*

Second, we made clear we were not holding "that mere compliance with the terms of a no-contact order, while important, should by itself foreclose the possibility of the extension of a no-contact order." *Id.* at 483. We further noted how "[t]his would be particularly true if the original conduct at issue involved violence or the threat of violence." *Id.*

This case, of course, involves different circumstances. The most important difference is that Petro committed a crime of violence against his ex-wife. Another difference is that two five-year extensions have already been in effect, and Petro has not violated the no-contact order during that time—although he did violate it before.[3]

---

[3]S testified that she saw Petro in a Chinese restaurant. As in *Vance*, we do not consider such a "coincidental encounter" a violation of the no-contact order. 907 N.W.2d at 483. It appears the district court and the court of appeals here did not consider it a violation either. We note that both Petro and S have been living in the same town of 4,160 persons, yet S could recall only one accidental sighting of Petro over the last five years.

When the no-contact order was originally entered, Petro had recently beaten S, had repeatedly threatened her, and owned a gun collection (which the sheriff had seized). When the no-contact order was first extended for five years, these events were still in the near past. Also, Petro had violated the terms of his probation by making another threat toward S; this led to his deferred judgment being revoked.

When the second five-year extension was being sought in 2016, the district court and the court of appeals shifted focus in large part. They emphasized, justifiably, Petro's persistently hostile attitude toward S and his minimization of the prior no-contact order violations as exemplified by his testimony at the 2016 hearing.

Now, more than ten years have elapsed since any violation of the no-contact order. Petro is fifty-nine years old, S is sixty-one, and they have been divorced and living their own lives without any communication for over a decade. The children are grown. Petro has been regularly employed as a truck driver by the same employer for over five years. He completed the Batterer's Education Program as well as six or seven years of individual therapy. The gun collection remained in the sheriff's custody until it was sold; Petro no longer owns it.

In upholding the third and latest five-year extension of the no-contact order, the district court and the court of appeals majority cited the incident when Petro's parents drove by S's home and took photographs of items for sale. Yet S conceded that this incident had occurred prior to the 2016 hearing. In fact, the record indicates that it occurred in 2011 and that it was raised at the 2016

hearing. We agree with the court of appeals dissent that this incident is not substantial evidence to support the extension of the no-contact order from 2021 to 2026.

The district court and the court of appeals also mentioned Petro's desire to have his right to bear arms reinstated so he could hunt. By federal law, a domestic violence no-contact order of this kind has the effect of prohibiting the person subject to the order from possessing a gun. *See* 18 U.S.C. § 922(g)(8). Specifically, federal law criminalizes the possession of a firearm by a person who "is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person" provided the order "was issued after a hearing" and "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner." *Id.*; *see also Weissenburger v. Iowa Dist. Ct.*, 740 N.W.2d 431, 436 (Iowa 2007) (holding that Iowa courts have no authority to modify a domestic abuse no-contact order to allow the person subject to the order to possess firearms).

Any person with a legitimate reason for possessing a firearm is barred from doing so while the order remains in place. The order and the firearms restriction go hand in hand. Thus, the defendant's desire to have both lifted is an insufficient ground *on its own* for concluding that the defendant is still a threat to the protected party. Rather, the relevant question should be what the

remainder of the record shows as to whether the defendant would constitute a threat to S at this point if allowed to possess a firearm.[4]

Lastly, the district court referred to Petro's testimony where he described the termination of parental rights hearing as "[a]rguably the worst day of my life." In our view, this testimony does not constitute substantial evidence that Petro poses an ongoing threat to S. We suspect that many people who lost their parental rights would, in retrospect, have the same feeling. Notably absent from the 2021 hearing were combative statements like the ones Petro voiced repeatedly in 2016.[5]

**V. Conclusion.**

We conclude that Petro carried his burden of showing that he no longer poses a threat to S's safety and that substantial evidence does not support the contrary conclusion. Therefore, we reverse the decision of the district court to extend the no-contact order for an additional five years and remand for entry of an order terminating the no-contact order.

---

[4]At oral argument, the State pointed out that even without the order in place, it will remain illegal for Petro to possess a firearm. That is because federal law also makes it unlawful for anyone previously convicted of a "misdemeanor crime of domestic violence" to possess a firearm. 18 U.S.C. § 922(g)(9). As relevant here, a misdemeanor crime of violence is one that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse . . . of the victim." *Id.* § 921(a)(33)(A). The United States Supreme Court has held that the word "element" qualifies only "the use [of force]," and thus the domestic relationship, "while it must be established, need not be demonstrated as an element of the predicate offense." *United States v. Hayes*, 555 U.S. 415, 426 (2009).

The district court may have been referring to the possibility of expungement. *See* Iowa Code § 901C.3 (allowing expungement of certain misdemeanors); 18 U.S.C. § 921(a)(33)(B)(ii) (excluding expunged convictions from the definition of "misdemeanor crime of domestic violence"). We do not take a definitive position on these unbriefed matters.

[5]No examples were cited by the district court, and on our review, we find none. Nor did the district court make any observations about Petro's demeanor or attitude.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except May, J., who takes no part.