# IN THE SUPREME COURT OF IOWA

No. 21–0672

Submitted November 17, 2022—Filed January 13, 2023

**STATE OF IOWA,**

Appellee,

vs.

**ROYRIGUEZ PATTERSON,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Christopher Kemp, District Associate Judge.

Royriguez Patterson appeals a restitution order that was filed in both a felony case and a dismissed misdemeanor case. **APPEAL DISMISSED IN CASE NO. NTA0948898; CERTIORARI REVIEW GRANTED AND WRIT ANNULLED IN CASE NO. OWOM088283.**

May, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey (argued), State Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout (argued), Assistant Attorney General, for appellee.

**MAY, Justice.**

Here we consider the proper forms of review for restitution orders. Royriguez Patterson appeals a restitution order that was cross-filed in a felony case (Case No. OWOM088283) and a dismissed misdemeanor case (Case No. NTA0948898). In the dismissed misdemeanor case, we decline to grant review. In the felony case, we grant certiorari review; we conclude the restitution order is not illegal; and, therefore, we annul the writ of certiorari.

**I. Background Facts and Proceedings.**

This case arises from a collision on Interstate 235 in Des Moines. On February 12, 2020, a vehicle driven by Patterson rear-ended a vehicle driven by James Tidwell. Tidwell suffered serious injuries. His vehicle sustained substantial damage.

On the same day, the State charged Patterson with failure to maintain control, a simple misdemeanor, in violation of Iowa Code section 321.288(1) (2020). This charge was assigned case number NTA0948898.

On March 20, the State also charged Patterson in a three-count trial information as follows:

Count I: Serious injury by vehicle (OWI), a class "D" felony.[1]

Count II: Serious injury by vehicle (reckless), a class "D" felony.[2]

---

[1]Iowa Code § 707.6A(4).

[2]*Id.*

Count III: Operating while intoxicated, a serious misdemeanor.[3]

This felony case was assigned case number OWOM088283.

In October, Patterson reached a plea deal with the State. Patterson filed a petition to plead guilty to count II, serious injury by vehicle (reckless). Through his petition, Patterson admitted that "[o]n 2/12/2020 in Polk County, Iowa, [he] unintentionally caused serious injury including a broken leg to James Tidwell by willfully driving in a manner that was with wanton disregard for the safety of others and in the process rear-ended Mr. Tidwell's vehicle." And Patterson advised the court that in exchange for his plea to count II, the State had agreed that "[c]ounts I and III and companion citation NTA0948898" should be "dismissed at Defendant's cost."

The court accepted Patterson's plea. In December, the court sentenced Patterson. Consistent with the parties' agreement, the court adjudged Patterson guilty of count II. The court sentenced Patterson to prison but suspended his sentence and ordered probation. The court also ordered Patterson "to pay" victim pecuniary damages (VPD) "in the amount of $TBD for the costs inflicted on the victim(s) of this crime." In the same paragraph, the court noted that "[i]f the amounts of VPD are not available at the time of sentencing, a supplemental order will follow." In a separate paragraph entitled "DISMISSAL OF OTHER COUNTS AND CASES," the court dismissed counts I and III as well as the misdemeanor

---

[3]Iowa Code § 321J.2.

case but still ordered Patterson "to pay court costs and any victim restitution associated with these counts and/or cases."

In February 2021, the State filed a motion to amend Patterson's sentence to include restitution. The State asked for $42,100.92, consisting of $34,512.93 for Tidwell's lost wages and the remainder for car damage. The same day, the district court granted the State's motion and ordered Patterson to pay $42,100.92 in VPD. The order also said that "[i]f Defendant contests the victim pecuniary damages amount ordered herein, Defendant must request a hearing within 30 days."

Patterson requested a hearing, and the court obliged. Tidwell testified about the accident and his resulting injuries—a broken humerus, dislocated left shoulder, dislocated right hip, fractured acetabulum (hip socket), fractured L4–L5 vertebrae, and a spleen injury. He was in the hospital for nineteen days, in a wheelchair for four months, and had been doing physical therapy. He explained that, based on what he had been told, it would take eighteen to twenty-four months for him to recover from the hip injury.

Tidwell also testified that he had not been able to work at all since the accident. Indeed, he still struggled to walk.

For the past sixteen years, though, he had worked a "very physical" job in concrete leveling. In 2019—the year before the accident—Tidwell had worked for A1 Concrete Leveling. The State introduced his 2019 W-2. It showed 2019 earnings of $34,512.93. Plus, Tidwell testified, he had made "6 to 7,000" dollars more through a side job. He had received a 1099 but had lost it during a move.

The State also introduced a 1099-G form. It showed that Tidwell had received an additional $6,600 in unemployment in 2019. Tidwell explained that due to the seasonal nature of concrete work, he was typically unemployed between November and April. Consistent with this pattern, Tidwell was laid off in November 2019.

As for 2020, Tidwell explained that he had received $6,000 from the attorney general's office because of the collision. He also received COVID-19 stimulus payments. And up until a few weeks before the collision, he was still receiving unemployment benefits from his 2019 layoff.

Tidwell also testified that, but for the accident, he would have worked as a union journeyman in 2020. He believed that—even with COVID—he would have earned more in 2020 than in 2019.

Following the hearing, the court entered an order on restitution. The court concluded that the State had not proven the claimed restitution amounts for the car "by a preponderance of the evidence." "From the testimony presented, it appear[ed]" to the court that "the damage to the vehicle was covered" by a finance company.

Conversely, the court concluded that the State had proven "restitution for lost wages by a preponderance of the evidence." The court expressly found Tidwell's testimony to be "credible." And the court believed that Tidwell's "2019 W-2 wages are sufficient evidence of his lost wages for the year 2020, which he was unable to earn because of" Patterson's "actions." Also, although Tidwell received $6,000 from the attorney general's office in 2020, this payment "would

not fully offset the seasonal unemployment benefits" that Tidwell "annually received."

So the court ordered Patterson to pay restitution in the amount of $34,512.93—the amount shown on Tidwell's 2019 W-2. The order was cross-filed in both the felony case and the dismissed misdemeanor case.

Patterson filed notices of appeal in both cases. Our court then entered an order questioning whether we had jurisdiction in the misdemeanor case. We directed Patterson to "file a statement regarding whether an appeal is allowed as a matter of right in [the misdemeanor case], or whether some other form of appellate review is appropriate and being sought."

In his responsive filing, Patterson addressed the court's jurisdiction in both cases. For the felony case, Patterson claimed a right of appeal. For the misdemeanor case, Patterson asked the court to treat his notice of appeal as an "application for discretionary review and/or petition for writ of certiorari." The State resisted, and Patterson replied. Our court then ordered the jurisdictional issue to be submitted with the appeal. Our order instructed:

> The parties are directed to brief the issue of whether an application for discretionary review or a petition for writ of certiorari should be granted in [the misdemeanor case]. The parties are further directed to address whether the appellant has a right of appeal from the restitution order entered in [the felony case], or whether some other form of review is appropriate.

The parties complied with this order. And counsel provided additional insights at oral argument.

**II. Issues on Appeal.**

Patterson's brief presents three arguments. First, he argues that we should grant discretionary or certiorari review in the misdemeanor case. Second, as to the felony case, Patterson claims that (1) he has a statutory right to appeal; (2) alternatively, even if he has no statutory right, equal protection and due process require us to permit his appeal anyway; and (3) if we conclude that he has no right to appeal, we should nevertheless grant certiorari review. Finally, as to the merits, Patterson argues that the restitution award lacks substantial evidentiary support. We address each issue in turn.

**III. Analysis.**

**A. Review of Restitution Order in The Dismissed Misdemeanor Case.** Patterson begins by asking us to reverse the restitution order in the misdemeanor case. Patterson concedes, though, that he has no right of appeal from a simple misdemeanor. *See* Iowa Code § 814.6(1)(*a*)(1). Instead, he suggests that we should grant certiorari review or discretionary review. Patterson emphasizes that "[e]ntry of a restitution judgment in dismissed cases is a widespread on-going practice in criminal law." And so, the question of whether restitution judgments can be entered in dismissed cases is "important to the judiciary and the profession." *Id.* § 814.6(2)(*e*).

We assume without deciding that Patterson has posed an important question. But this case is a poor vehicle for answering it. "[T]raditional notions of judicial restraint" counsel us to avoid answering important questions "without the benefit of meaningful adversarial briefing." *State v. Young*, 863 N.W.2d 249,

283 (Iowa 2015) (Mansfield, J., concurring specially). And when it comes to the misdemeanor case, we don't even have *adversaries*, much less adversarial briefing. Patterson contends that the restitution order cannot be enforced in the misdemeanor case—and the State doesn't disagree. In fact, the State claims that restitution was "not [actually] ordered*"* in the misdemeanor case.[4] Our review supports this view.

Accordingly, we decline to address the hypothetical question of whether it is proper to order restitution in a dismissed case, misdemeanor or otherwise. We save that question for a future case. We decline to grant certiorari or discretionary review in the misdemeanor case. We proceed instead to the felony case.

**B. Right to Appeal from Postsentencing Restitution Order.** Next, Patterson argues that he has a right to appeal the restitution order entered in the felony case. We disagree. Instead, we believe certiorari is the proper avenue for review.

Under the Iowa Constitution, our appellate jurisdiction is subject to "such restrictions as the general assembly may, by law, prescribe." Iowa Const. art. V, § 4. Ordinarily, Iowa Code section 814.6 determines whether we have "subject-matter jurisdiction for the review of a criminal defendant's appeal." *State v. Propps*, 897 N.W.2d 91, 96 (Iowa 2017). Section 814.6 generally provides criminal defendants with a "right of appeal" from:

---

[4]The State also notes that Iowa Code section 910.1(3) excludes "simple misdemeanors under chapter 321" from the "criminal activities" for which restitution can be imposed. Either way, the State certainly doesn't think restitution can be enforced in the misdemeanor case.

A final judgment of sentence, except in the following cases:

(1) A simple misdemeanor conviction.

(2) An ordinance violation.

(3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

Iowa Code § 814.6(1)(*a*).

But the legislature has also enacted special provisions that govern appellate review of restitution orders. Our analysis must account for those provisions. *See id.* § 4.7 (directing that "[i]f a general [statutory] provision conflicts with a special . . . provision," and if the conflict "is irreconcilable," then "the special . . . provision prevails"). *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183–88 (2012) (discussing the "general/specific canon").

We start with section 910.3(8). It provides that "[a] permanent restitution order entered *at the time of sentencing* is part of the final judgment of sentence as defined in section 814.6 and shall be considered in a properly perfected appeal." Iowa Code § 910.3(8) (emphasis added). But the appeal before us is not about an order that was "entered at the time of sentencing." The order "entered at the time of" Patterson's sentencing merely directed that restitution should be determined later ("$TBD"). Patterson is not challenging *that* order. So section 910.3(8) does not govern.

Instead, we think the better fit is section 910.3(10). It provides that "[a] permanent restitution order may be superseded by subsequent orders if additional or different restitution is ordered" and that "[a] *permanent restitution*

*order entered after the time of sentencing shall only be challenged pursuant to section 910.7.*" *Id.* § 910.3(10) (emphasis added).

In this case, Patterson is challenging an order entered in April 2021—over three months "after the time of sentencing"—that obligates Patterson to pay a specific amount ($34,512.93) of restitution. This April 2021 order was a "permanent restitution order entered *after the time of sentencing.*" *Id.* (emphasis added); *see id.* § 910.1(7) (defining "permanent restitution order" as "an enforceable restitution order entered either at the time of sentencing or at a later date determined by the court"). So section 910.3(10) governs. As a result, the April 2021 order may "only be challenged pursuant to section 910.7." *Id.* § 910.3(10). And section 910.7(5) provides that "[a]ppellate review of a district court ruling under [section 910.7] shall be by writ of certiorari." It follows, then, that Patterson's avenue to "[a]ppellate review" is "by writ of certiorari," not appeal as of right.[5]

But Patterson suggests that this approach is unconstitutional. For one thing, Patterson notes that restitution proceedings are much like civil damages actions. And in a civil case, there is usually a right to appeal. So, in Patterson's view, equal protection requires a right to appeal from restitution orders. *See*

---

[5]Importantly, Iowa Code section 910.7(4) precludes an appellate court from reviewing an offender's plan of restitution—including a permanent restitution order, *see id.* § 910.1(9) (defining " 'Plan of restitution' [to] mean[] a permanent restitution order")—"unless the offender has exhausted the offender's remedies under [section 910.7] and obtained a ruling from the district court prior to the issue being raised in the appellate courts." Here, Patterson requested a hearing to challenge the initial victim restitution award of $42,100.92; the district court held a hearing, at which Patterson was represented; and ultimately, the court granted Patterson's challenge in part by reducing the restitution award to $34,512.93. So Patterson complied with section 910.7's requirements, and we may review the restitution order through a writ of certiorari. *See id.* § 910.7(5).

U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. Moreover, Patterson suggests that some provisions of chapter 910 could lead to due process violations. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. For instance, Patterson argues that "[i]f Iowa Code section 910.3(10) . . . is interpreted to require a defendant to request a hearing pursuant to Iowa Code section 910.7 to contest the initial amount of victim restitution," then section 910.3(10) "violates due process."[6] From this, Patterson infers that he "must be granted an appeal of right."

What we do not understand, though, is how Patterson could be harmed if we grant certiorari review instead of permitting an appeal of right. Patterson does not suggest that our process would be any different if we allow one instead of the other. In fact, he suggests that our process should be the same either way. No matter how we *label* our review, Patterson wants us to decide the very same question: "Does substantial evidence support the restitution order of $34,512.93?" So we cannot say that Patterson's rights (much less his constitutional rights) could be endangered by granting certiorari review (as section 910.7 expressly permits) instead of permitting an appeal as of right (which section 910.7 implicitly disallows). We proceed with certiorari review.

**C. Certiorari Review.** "A writ of certiorari lies where a . . . court has exceeded its jurisdiction or otherwise acted illegally . . . . " *Lozano Campuzano v. Iowa Dist. Ct.*, 940 N.W.2d 431, 434 (Iowa 2020) (second omission in original)

---

[6]For reasons explained, we do not reach the merits of Patterson's constitutional concerns, including his critiques of section 910.7.

(quoting *Weissenburger v. Iowa Dist. Ct.*, 740 N.W.2d 431, 434 (Iowa 2007)). "We have interpreted this standard liberally." *Bousman v. Iowa Dist. Ct.*, 630 N.W.2d 789, 794 (Iowa 2001). We have said that "illegality" occurs "when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 611 (Iowa 2013) (quoting *State Pub. Def. v. Iowa Dist. Ct.*, 747 N.W.2d 218, 220 (Iowa 2008)).

Here, we consider whether the April 2021 restitution order "lack[s] substantial evidentiary support." *Id.* "Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993).

The ultimate question, then, is whether substantial evidence supports the district court's award of $34,512.93 for earnings that Tidwell lost because of the February 2020 automobile collision.[7] We think so. Tidwell's 2019 W-2 showed wage earnings of $34,512.93. Plus Tidwell testified that in 2019, he had made "6 to 7,000" dollars more through a side job. But Tidwell's work is very physical. And the February 2020 collision caused him great physical harm. According to Tidwell—whom the district court found credible—he could not work from the date of the collision through the time of the April 2021 hearing. So there was

---

[7]*See* Iowa Code § 910.2 (requiring sentencing courts to "order that pecuniary damages be paid by each offender to the victims of the offender's criminal activities"); *id.* § 910.1(6) (defining "pecuniary damages" to include "all damages to the extent not paid by an insurer on an insurance claim by the victim, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium").

evidence to show that Tidwell lost at least a year's worth of income—indeed, more—as a result of the collision. This supported the district court's award of $34,512.93, an amount that matched Tidwell's 2019 W-2 wages.

Patterson complains that the State did not supplement Tidwell's testimony about his disability with any medical records or expert testimony. But Patterson does not cite—and we have not found—authority that would prevent the district court from relying on Tidwell's testimony about his inability to perform construction work—or to even walk without struggling—since the collision.

Patterson also points to evidence that—even without the collision—Tidwell would have made less in 2020 than in 2019. Patterson notes that Tidwell was no longer with his 2019 employer, Tidwell may not have found equally lucrative work in 2020, COVID would have reduced his earning potential, and so on. But Tidwell testified that, despite COVID, he expected to make more in 2020 as a union journeyman. In any event, we agree with the district court that Tidwell's 2019 W-2 wages provided "a reasonable basis from which" his lost earnings from 2020 could be "inferred or approximated." *Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968) ("If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated."). We also remember that in a substantial-evidence review, "[t]he fact that others may have reached a different conclusion or that an opposite result would have been fully justified by the evidence is of no importance." *Vohs v. Dist. Comm'rs*, 218 N.W.2d

595, 596 (Iowa 1974) (en banc) (quoting *Reisner v. Bd. of Trs. of Fire Ret. Sys.*, 203 N.W.2d 812, 814 (Iowa 1973) (en banc)).

Patterson also points out that Tidwell received $6,000 from the attorney general's office. Although the record is thin, it appears that this was compensation for Tidwell's lost wages. Patterson believes that he should receive a credit for this amount. The district court disagreed because $6,000 "would not fully offset the seasonal unemployment benefits . . . that Mr. Tidwell annually received." This finding is supported by substantial evidence: Tidwell testified that he regularly received seasonal unemployment, and tax documents showed he received $6,600 in unemployment in 2019.

All things considered, we conclude that the April 2021 restitution award is supported by substantial evidence. Therefore, it is not illegal.

**IV. Conclusion.**

In the misdemeanor case (Case No. NTA0948898), Patterson has no right of appeal. Moreover, we decline to grant certiorari or discretionary review. That appeal is dismissed.

In the felony case (Case No. OWOM088283), we grant certiorari review pursuant to Iowa Code sections 910.3(10) and 910.7(5). Following review, we conclude that the challenged order is supported by substantial evidence and, therefore, is not illegal. Accordingly, we annul the writ.

**APPEAL DISMISSED IN CASE NO. NTA0948898; CERTIORARI REVIEW GRANTED AND WRIT ANNULLED IN CASE NO. OWOM088283.**