# IN THE COURT OF APPEALS OF IOWA

No. 24-0945
Filed October 29, 2025

**CHRISTINE SUE LUNA,**
        Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR CERRO GORDO COUNTY,**
        Defendant.
_____

        Certiorari from the Iowa District Court for Cerro Gordo County, Rustin
Davenport, Judge.

        A plaintiff challenges the amount of victim restitution through a writ of
certiorari. **WRIT ANNULLED.**

        Martha J. Lucey, Appellate Defender, and Bradley M. Bender, Assistant
Appellate Defender, for plaintiff.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney
General, for defendant.

        Considered without oral argument by Greer, P.J., Chicchelly, J., and Vogel,
S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2025).

**VOGEL, Senior Judge.**

Christine Sue Luna, through writ of certiorari, challenges the amount of restitution the district court imposed following Luna's guilty plea to theft in the second degree as a habitual offender. She contends that there was a lack of substantial evidence to support the full amount imposed.

## I.        Background Facts and Proceedings

On November 17, 2022, police were dispatched to Casey's General Store (Casey's) in Mason City. Casey's management had discovered that the amount of money being paid out for winning lottery tickets did not match the value of winning lottery tickets being redeemed at the store. Due to the discrepancy, the store was missing approximately $15,000. Police talked to the store's manager, Paula Schnell, who stated Luna, an employee at the store, admitted she was stealing money from Casey's.

During police questioning, Luna detailed how she had been stealing from Casey's. When a customer came into the store to cash in a lottery ticket, the customer gave the cashier the ticket and was given the cash winnings in exchange. The redeemed ticket was then put in a basket so it could be balanced with the cash drawer. While balancing the cash drawer, the manager would go through the lottery tickets and enter them into the system so that the store received the proper amount of money from the State lottery system. After balancing the winning lottery tickets, the manager would throw them in the trash. Luna would then take the tickets out of the trash and cash them a second time, keeping the money for herself. Thus, for every winning ticket, Casey's was charged twice while only being

reimbursed by the lottery system once; the first time to pay the customer holding the winning ticket, and the second time by Luna to line her own pockets.

Luna was charged with theft in the first degree with a habitual offender enhancement. Luna subsequently pleaded guilty to theft in the second degree as a habitual offender in violation of sections 714.1(1), 714.2(2), 714.3, 902.8, and 902.9(1)(c) (2022). In exchange for the guilty plea, the State agreed to recommend that Luna receive a suspended fifteen-year sentence, no fine imposed, and a five-year term of probation, with a requirement to pay restitution. In the written plea, Luna admitted, "On or about May 1, 2022 to November 17, 2023, . . . I took possession of the property of another, or property in the possession of another with the intent to deprive the other thereof and the value of the property was more than $1,500 [and] less than $10,000."[1] As part of the plea agreement, it was also agreed that Luna would request a hearing on the restitution amount.

At sentencing, the district court accepted the guilty plea and imposed an indeterminate term of imprisonment not to exceed fifteen years with a three-year mandatory minimum before suspending the sentence and placing Luna on probation for five years. The district court also ordered a hearing to address the contested claim for restitution.

At the restitution hearing, Schnell testified—working with Casey's asset protection division—she calculated the amount stolen by Luna was $15,117. This amount was reached by comparing an itemized list of the store's lottery losses with

---

[1] The end date in the trial information as well as the plea agreement appears to mistakenly list 2023 instead of 2022. Any mistake here is immaterial as only the beginning date is affected by the disputed restitution amount on appeal.

Luna's work schedule between May 7, 2022, and October 28, 2022. Schnell further testified that she reviewed video recordings from September 24, 2022, through October 28, 2022, in which she observed Luna taking lottery tickets out of the trash and redeeming them. Schnell stated she did not see any other employees taking part in the theft in the video recordings, however, she was unable to review any video recordings from May 7, 2022, to September 17, 2022.

Schnell also testified that two other employees had been terminated for lottery-related misconduct during the relevant period but noted that their misconduct was different from Luna's. One employee was terminated for purchasing and redeeming lottery tickets on the clock, which violated Casey's policy. The other employee was terminated for stealing lottery tickets.

The district court ordered Luna to pay restitution in the amount of $15,117 to Casey's. In its restitution order, the court stated:

> The Court finds that the State has shown by a preponderance of the evidence that Christine Luna stole $15,117. The thefts occurred during times when Luna was working at the Casey's store. The thefts occurring before September 17, 2022, were consistent with the same scheme that was observed being used by Luna from September 24, 2022, to October 28, 2022. While other employees may have been terminated for theft involving lottery tickets, they were not terminated for the same sort of unique scheme that Luna had engaged in. While this circumstantial evidence may not have sustained a burden of proof . . . beyond a reasonable doubt, the court finds that the evidence presented by the State does satisfy a preponderance of the evidence burden.

Luna challenges the restitution order by writ of certiorari.

## II. Standard of Review

"In a certiorari case, we review the district court's ruling for correction of errors at law." *Weissenburger v. Iowa Dist. Ct.*, 740 N.W.2d 431, 434 (Iowa 2007).

"We . . . interpret[] this standard liberally." *State v. Patterson*, 984 N.W.2d 449, 456 (Iowa 2023) (citation omitted). "A writ of certiorari lies where a lower . . . court has exceeded its jurisdiction or otherwise acted illegally." *Weissenburger*, 740 N.W.2d at 434 (citation omitted). "Illegality occurs when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *Patterson*, 984 N.W.2d at 456 (cleaned up). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001) (citation omitted).

## III.  Analysis

Iowa code section 910.2(1) requires a defendant to pay any pecuniary damages to the victim of their offense as part of restitution. A "victim" is "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(11). "Pecuniary damages" are

> all damages to the extent not paid by an insurer on an insurance claim by the victim, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(6). "The [S]tate bears the burden of proof to recover damages due [to] the victim." *State v. Roache*, 920 N.W.2d 93, 100 (Iowa 2018).

"In calculating a restitution order, the district court must find a causal connection between the established criminal act and the injuries to the victim." *Bonstetter*, 637 N.W.2d at 168. "The damage must have been caused by the offender's criminal act to justify the restitution order." *Id.* The statute allows recovery of "all damages" that "the State can show by a preponderance of the evidence." *Id.* (quoting *State v. Holmberg*, 449 N.W.2d 376, 377 (Iowa 1989)).

Luna argues the district court erred by ordering her to pay restitution to Casey's in the amount of $15,117. She asserts "substantial evidence did not support the award." Luna claims that the "State did not establish by a preponderance of evidence a causal connection between [her] admitted criminal conduct and the $15,117 ordered in restitution." In her brief, Luna concedes that she acknowledged at least $1500 in restitution damages as a necessary condition to plead guilty to second-degree theft, but that the acknowledgement did not extend to the entire $15,117 amount.[2]

In arguing that there was a lack of substantial evidence, Luna focuses on the fact that there were no video recordings from May 7, 2022, to September 17, 2022, and that Schnell testified she did not observe Luna redeem any cashed-out lottery tickets during that period. Luna also points out that Schnell did not compare other employees' work schedules to the dates when the lottery tickets were redeemed for a second time, including the two employees who were terminated around the same time for misconduct relating to lottery tickets.

Thus, Luna claims that Schnell "merely assumed Luna was responsible for the losses incurred from May 7, 2022, to September 17, 2022, based on a similar pattern of loss from lottery tickets." According to Luna, this reliance on Schnell's assumptions led the district court to speculate when concluding that Luna owed $15,117 in restitution to Casey's. Therefore, Luna asserts that such speculation does not meet the substantial-evidence standard for restitution.

---

[2] Luna further acknowledged the restitution amount was not limited by the parameters of her guilty plea. *See Holmberg*, 449 N.W.2d at 377.

The State argues it "proved by a preponderance of the evidence that [Luna's] unique brand of lottery-related theft was the cause of the $15,117 in economic damages claimed by Casey's." Due to the "unique brand" that Luna used, the State claims it provided evidence of her modus operandi to establish a causal connection between Luna's theft that was video-recorded and the money that was stolen prior to September 24, 2022.

Luna is correct that restitution damages cannot be speculative. *See State v. Watts*, 587 N.W.2d 750, 752 (Iowa 1998) (holding restitution amount cannot be speculative nor imaginary but have a reasonable basis). However, there was a causal connection between the total amount of restitution found by the district court and Luna's theft. A reasonable mind could find that Luna was responsible for the total amount of restitution based on the "unique brand" of her theft, combined with the fact that she was on the work schedule when each theft occurred. Furthermore, the only similarity that Luna's theft had with the two other employees that were terminated was that lottery tickets were involved. *See State v. Ernst*, 954 N.W.2d 50, 58 (Iowa 2021) (rejecting argument that evidence susceptible to more than one inference is merely speculative). Neither of the other two employees followed the more elaborate scheme of double redeeming lottery tickets as Luna did. The nature of their misconduct would not have resulted in the amount being paid for winning lottery tickets not matching the value of tickets redeemed.

Based on Schnell's testimony about the video footage capturing Luna taking the lottery tickets from the trash and redeeming them, the district court could find that this scheme went further back than what was still available on video recording.

*State v. Putman*, 848 N.W.2d 1, 11 (Iowa 2014) ("To permit the inference that similar acts establish the same person committed both acts, we have required that the other acts must be strikingly similar or of a unique nature." (cleaned up)); *State v. Edouard*, 854 N.W.2d 421, 450 (Iowa 2014) ("We do not believe restitution proceedings are subject to strict rules of evidence."), *overruled on other grounds by, Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 707–08 (Iowa 2016). As the district court stated: "Schnell's investigation showed that the way that Luna conducted her theft was unique and had not been done by any other employee." Therefore, the "unique brand" or scheme of theft established a causal connection between Luna's theft that was recorded from September 24, 2022, to October 28, 2022, and the missing money from lottery tickets that were redeemed between May 7, 2022, to September 17, 2022.

Under a preponderance-of-the-evidence standard, the district court needed to find that the State's evidence was "more likely true than not true." *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 761 (Iowa 2009). As explained, based on the record, the district court could have found that it was more likely than not that Luna was culpable for the entire restitution amount. Based on the record before us, we are not forced to bridge major gaps to uphold the total restitution amount. *See State v. Colbert*, No. 04-1059, 2005 WL 2085643, at *2 n.4 (Iowa Ct. App. Aug. 31, 2005) ("We are therefore extremely reluctant to uphold the full amount of restitution ordered by the district court when to do so would require us to bridge these wide gulfs in the evidence of the necessary causal connection with less than reasonable inferences.").

After finding a causal connection between Luna's theft and the amount of money Casey's was missing from twice-redeemed lottery tickets, the district court had broad discretion in determining the amount of restitution. *State v. Shears*, 920 N.W.2d 527, 530 (Iowa 2018) ("The district court is afforded broad discretion in determining the amount of restitution when the record contains proof of a reasonable basis from which the amount may be inferred."); *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995) ("A restitution order is not excessive 'if it bears a reasonable relationship to the damage caused.'" (quoting *State v. Mayberry*, 415 N.W.2d 644, 647 (Iowa 1987))).

In sum, the State presented substantial evidence that Luna, through her unique lottery ticket theft-redemption scheme, was culpable for the total amount of money Casey's claimed was stolen between May 7, 2022, and October 28, 2022. This allowed the district court, through the preponderance of the evidence, to find that Luna owed $15,117 in restitution to Casey's. Therefore, the total amount in the district court's order of restitution was proper.

**WRIT ANNULLED.**